AARON M. CLEFTON, Esq.  (SBN 318680)
PAUL L. REIN, Esq. (SBN 43053)
REIN & CLEFTON, Attorneys at Law
1423 Broadway, # 1133
Oakland, CA 94612
Telephone:  510/832-5001
Fax:   510/832-4787
info@reincleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALL ACCESS LAW GROUP
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

Attorneys for Plaintiff JAMES ALGER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALGER, <br><br>             Plaintiff, <br><br>     vs. <br><br> BRE EL SEGUNDO PROPERTY OWNER A LLC; TORRANCE INN JV LLC, <br><br>         Defendants | **Case No.** 24-cv-5671 <br><br> ***Civil Rights*** <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES
1

JAMES ALGER ("Plaintiff") complains of BRE EL SEGUNDO PROPERTY OWNER A LLC; TORRANCE INN JV LLC ("Defendants") as follows:

### INTRODUCTION

1.      This is a civil rights action involving the lack of disabled access to the building, structure, facility, complex, property, land, development, and/or business complex known as "Aloft Hotel" at 475 N Pacific Coast Hwy, El Segundo, CA 90245 ("Aloft Hotel"). Specifically, Defendants repeatedly denied Plaintiff, a person with a disability who uses a wheelchair or scooter for mobility ("Wheelchair"), access to the swimming pool ("Aquatic Facilities") because the chair lift on their pool was inoperable and in disrepair. They did so over several months during each of Plaintiff's multiple visits, and even after he complained each time to resolve the issue before litigation. In addition to this, Plaintiff was unable to use the designated loading zone due to the lack of a compliant designated and protected loading zone. Also, although Defendants apparently have an accessible check-in counter, several times months apart, Plaintiff has been unable to use it because it is not equipped with a card reader to check in, and Aloft Hotel staff insisted on disabled individuals using the regular counter. Once at his room defendant was met with multiple non-working automatic entry doors, which resulted in the entry doors to the rooms being extremely heavy and difficult to open. This also occurred on multiple "accessible" rooms over multiple visits months apart. Despite using the chat feature of the Marriott Bon Voy application at the time, emailing the General Manager after the first visit, sending a follow-up letter with the original email attached, and taking the extraordinary step of having it personally served on the hotel staff by an independent third party after the second visit in an effort to avoid litigation, the Plaintiff did not even receive the courtesy of a response. Moreover, months later, no corrective action has been

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

2

taken. Plaintiff even contacted former counsel that represented the Aloft Hotel in a previous ADA matter in a futile attempt to get a response to no avail. This has left Plaintiff with no other choice but to file this action.

2.     Defendants' lack of accessible facilities denies "full and equal" access required by Title III of the Americans with Disabilities Act of 1990 and supplementary California civil rights laws. As a result, Plaintiff has been continuously denied full and equal access to the Aloft Hotel and has been embarrassed and humiliated. Plaintiff seeks damages required under the provision of access under the Americans with Disabilities Act of 1990 ("ADA"), injunctive relief for full and equal access, and statutory damages under California law. Plaintiff also seeks declaratory relief and recovery of reasonable statutory attorney fees, litigation expenses, and costs under federal and state law.

## JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction of this action under 28 U.S.C. § 1331 for violations of the ADA, 42 U.S.C. §§ 12101 *et seq*. Under supplemental jurisdiction, attendant, and related causes of action, arising from the same facts, are also brought under California law, including, but not limited to, violations of the Unruh Civil Rights Act and the California Disabled Persons Act.

4.     Venue is proper in this court under 28 U.S.C. § 1391(b) and is founded on the fact that the real property that is the subject of this action is in this District and that Plaintiff's causes of action arose in this District.

## PARTIES

5.     Plaintiff JAMES ALGER ("Plaintiff") is, and at all times relevant here was, a qualified individual with a physical disability. Plaintiff suffers from Charcot-Marie-Tooth disease ("CMT"), a hereditary neuropathy affecting the peripheral nerves that govern muscle control, leading to progressive sensory and functional deficits in the extremities, including the hands, arms, legs, and feet. A work-related

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

3

injury exacerbated the progression of this disease. Plaintiff thus experiences significant ambulatory difficulties and fine motor impairments. While capable of walking short distances with maximum assistance, Plaintiff relies on a Wheelchair for mobility outside the home and operates a vehicle equipped with hand controls.

6. In an effort to preserve functionality and alleviate pain associated with his disability, Plaintiff frequently utilizes facilities, such as swimming pools and whirlpools/spas. Due to restricted range of motion, diminished strength, and impaired dexterity, Plaintiff requires assistance with activities of daily living, including dressing, grooming, and loading his Wheelchair into and out of his vehicle. Although Plaintiff does not require constant 24-hour care, he increasingly requires general supervision and overnight assistance.

7. Plaintiff relies on a noninvasive ventilator due to compromised respiratory muscles, which impairs his breathing when supine. He requires assistance with setting up, using, and removing the ventilator. Malfunctions or disconnections of the device, which have occurred previously, pose severe risks, including hospitalization or worse if assistance is not promptly available. Family members or close friends typically provide this support.

8. Plaintiff's disability is progressive, yet at the time of this filing, he can, with assistance, get dressed and enter his vehicle. Once in his vehicle, he can function with minimal assistance until bedtime, as both his vehicle and home are adapted for his disability. Plaintiff has been issued a permanent disabled parking placard by the State of California and resides in Porter Ranch, California.

9. Defendants BRE EL SEGUNDO PROPERTY OWNER A LLC and TORRANCE INN JV LLC, are and at all relevant times were the owners, operators, lessors, and/or lessees of the subject business, property, and buildings at all times relevant to this Complaint.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

4

10.     Defendants did not make the necessary accommodations to ensure that their facilities, products, and services were accessible to Plaintiff and others with physical disabilities. This non-compliance with Federal and State laws on accessibility has directly led to the violations, continuing issues, and harms suffered by Plaintiff, as detailed in this complaint.

11.     Plaintiff is informed and believes, and on such information alleges, that at all times mentioned here, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated here within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of here.  All actions alleged here were done with the knowledge, consent, approval, and ratification of each of the Defendants here, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

12.     Defendants have discriminated against Plaintiff by failing to ensure that the facilities and policies at the Aloft Hotel comply with the mandates of the ADA and California law. Defendants have neglected and refused to provide full and equal access to the services, privileges, benefits, and advantages available to individuals without disabilities at the Aloft Hotel.

13.     The Aloft Hotel and its facilities, including, but not limited to, its entrances/exits, parking, interior paths of travel, transaction counters, restrooms, and pool are each a "public accommodation" and part of a "business establishment," subject to the requirements of § 301(7) of the ADA (42 U.S.C. § 12181(7) and of California Civil Code §§ 51 *et seq.*

14.     On information and belief, the Aloft Hotel and its facilities have, since January 26, 1993, undergone construction, alterations, structural repairs, and/or additions, subjecting the facility to disabled access requirements of § 303 of the ADA (42 U.S.C. § 12183). Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations. Irrespective of the Aloft Hotel's construction and alteration history, removal of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA.

15.     Plaintiff maintains memberships in several hotel rewards programs and for a multitude of reasons regularly stays at hotels, averaging well over 75 nights per year over the last eight years.[1] Notably, he has reached the ninth year of Elite status with Marriott Bonvoy[2] and currently holds Titanium level, which is their penultimate level, as he has for multiple years.

16.     Plaintiff places significant importance on hotels that offer Aquatic Facilities, as they are crucial for his exercise and in managing and attempting to reduce the progression of his disability. Consequently, when selecting a hotel, the availability of Aquatic Facilities is a primary factor for Plaintiff. Other factors include but are not limited to, the cost of the stay, the proximity to electric vehicle charging stations, and the hotel's location in relation to his travel plans. Additionally, Plaintiff needs support with his ventilator, as well as morning assistance with dressing and preparation. A family friend, who customarily provides this support when family is unavailable, is employed in Hawthorne, CA. Therefore, for convenience, he often selects hotels in general proximity to this friend's workplace,

---

[1] For clarity when averaging total stays over the last eight years it comes out to 178 stays per year at Marriott alone. His current average is above 75 stays per year.
[2] Marriott converted their "Marriott Rewards" program to "Marriott Bon Voy" in 2019

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

6

1   considering traffic and other logistical considerations.

2   17.     Plaintiff places significant importance on hotels that offer Aquatic Facilities,

3   as they are crucial for his exercise and in managing and attempting to reduce the

4   progression of his disability. Consequently, when selecting a hotel, the availability

5   of Aquatic Facilities is a primary factor for Plaintiff. Other factors include but are

6   not limited to, the cost of the stay, the proximity to electric vehicle charging

7   stations, and the hotel's location in relation to his travel plans. Additionally, given

8   that his wife often works from home three days a week and commutes to Gardena

9   on the other two, Plaintiff needs support with his ventilator, as well as morning

10  assistance with dressing and preparation. A family friend, who customarily

11  provides this support, is employed in Hawthorne, CA. Therefore, for convenience,

12  he often selects hotels in general proximity to this friend's workplace, considering

13  traffic and other logistical considerations.

14  18.     Plaintiff relies on water exercises in an attempt to preserve his muscle

15  function and range of motion, making access to hotels Aquatic Facilities essential

16  for both his health and pleasure. However, due to his disabilities, Plaintiff requires

17  an accessible pool lift to safely enter and exit the pool. Unfortunately, he has found

18  that many hotels often lack a pool lift, or their lifts are not working. As his

19  condition has progressed, and thus his reliance on hotels being accessible

20  increased, the lack of accessibility has become an ever-increasing source of

21  frustration to Plaintiff.

22  19.     Plaintiff stayed at the Aloft Hotel on October 22, 2023, December 4, 2023,

23  and June 20, 2024 (**Exhibit 1**), and was specifically deterred on December 7, 2023,

24  December 14, 2023, December 18, 2023, December 26, 2023, December 28, 2023,

25  and January 2, 2024. (**Exhibit 2**).

26  20.     On October 22, 2023, Plaintiff arrived at the Aloft Hotel, which advertises

27  among its amenities accessibility, including accessibility to the pool, and was

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES

immediately deterred from using the loading and unloading zone. Unfortunately, Plaintiff's safety and well-being would have been placed at risk due to the lack of a compliant access aisle at the passenger loading zone area. A protected and clearly designated access aisle at a passenger loading zone is crucial for individuals like Plaintiff in a Wheelchair to ensure safe access to his Wheelchair and hotel entry. It also helps to prevent obstructions like parked vehicles and its absence poses significant risks to individuals such as Plaintiff who use a Wheelchair.

21.     With all of this in mind, Plaintiff proceeded directly to the general parking area where he proceeded to park in the designated accessible parking space. While the signage was noncompliant and faded, Plaintiff was able to park his vehicle and utilize a protected path into the hotel without incident. Plaintiff then made his way to the check-in line and was called to the counter by hotel staff. Despite being directed to the inaccessibly high counter, due to its close proximity (about three feet to the right)[3] Plaintiff proceeded to the lower counter which appeared to be there specifically to comply with ADA access. Unfortunately, the lowered section of the check-in counter appeared to have no signage, and more importantly, no payment terminal. The high counter caused him difficulty and discomfort in the check-in because he was unable to reach the counter, verify the charges, use the payment system, or see anything that may have been on the counter. Instead, Plaintiff had a third-party do it for him.

22.     Plaintiff proceeded to his room to drop off his bags, but immediately discovered that he was assigned an inaccessible room that was so small, his Wheelchair could not even access the area. He proceeded back down to the front desk and was reassigned an accessible room. Upon arriving to that room, Plaintiff had trouble entering the room as the automatic opener was nonfunctional, so the

---

[3] The check-in counter at the Aloft Hotel is unique in that it is a circular C and relatively small.

1  door was heavy.

2  23.     After putting his bags down, Plaintiff proceeded down to the pool area.

3  Unfortunately, once at the pool deck, he was met with a pool chair lift that had no

4  battery attached. Assuming that it may have simply been that the battery was being

5  charged, Plaintiff contacted the hotel via the Marriott Bon Voy app. At 8:48 pm

6  Plaintiff sent the following message: "is there anyone available to get the pool lift

7  working? It does not appear to have a battery." He received an automated message

8  saying that he would "be right with" him and then a follow-up message advising



9  him they were dealing with other

10  guests and would respond "as

11  soon as possible." Not getting a

12  timely response he headed back to

13  his room. 45 minutes after

14  sending the initial request for

15  assistance Plaintiff was advised

16  that staff had "sent someone over to go check it out" and that they would keep him

17  updated (**Exhibit 3**). By the time the pool closed at 10 pm, there had still not been

18  a resolution.

19  24.     On November 2, 2023, after placing several calls requesting that the general

20  manager return his call, Plaintiff contacted the hotel again to get the name and

21  email address of the general manager. The individual was identified as "John

22  Garcia" and Plaintiff was provided the email address of

23  john.garcia@aloftelsegundolax.com. Plaintiff sent an email that stated in part, "On

24  October 22, 2023, I stayed at your establishment and encountered a non-

25  accessible/malfunctioning pool lift as well as a few other issues limiting my

26  access…" and requested that the manager contact him "…as soon as possible to

27  discuss remedying the identified issues…" No response was received. (**Exhibit 4**).

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES

25.     On November 13, 2023, after searching for the owner of the Aloft Hotel on Google, Plaintiff located an attorney who represented the owner in a different ADA case, Mr. Philip H. Stillman of Miami Florida ("Stillman"). As this was the only other contact Plaintiff could locate, at 1:03 pm Plaintiff placed a nine-minute call to Stillman in an attempt to obtain the contact information for the true and correct owners of the Aloft Hotel. Plaintiff explained the details of the accessibility barriers he ran into, including specifically the pool lift issue, the failure of a properly functioning accessible door to his hotel room and other "more minor issues with signage etc." Plaintiff elaborated on his repeated and ultimately futile attempts to reach the on-site management, noting that his efforts were met with indifference and a lack of serious consideration regarding the accessibility compliance issues he had raised. In detailing the purpose of his call, Plaintiff conveyed that this communication was an effort to escalate the matter by contacting the property owners directly, essentially "going up the ladder." Plaintiff expressed his hope that by reaching out to the higher echelons of ownership, the significant accessibility issues—outlined with examples and concerns within this case—would be taken more seriously and addressed more effectively than they had been by the on-site management, whose responses had been inadequate and dismissive, to the extent that there was one at all.  Plaintiff advised Stillman that he was not a high-frequency litigant[4] and "had no desire to be one." Stillman responded, "Well, we'll see." Stillman refused to provide any contact information for the owners of the Aloft Hotel, instead requesting that Plaintiff email him laying out all of his concerns but advised Plaintiff that he did not represent the Aloft Hotel on an ongoing basis. Stillman further stated that he would not be able to contact the

---

[4] For clarity: Plaintiff is not a "high-frequency litigant" per CCP §425.55 Plaintiff has filed six accessibility-related complaints in the immediate 12 months prior to this complaint.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

owners of the Aloft Hotel for several weeks as he was about to go on a scuba diving trip. In fact, Stillman mentioned his diving trip repeatedly during the conversation. Plaintiff left the conversation feeling that if an attorney who represented a client prioritized a recreational diving trip over the concerns he was raising, and could not be bothered to make a simple phone call to give his former client a heads-up, avoid expensive litigation, and rapidly proceed to improving access so that disabled people could use their facilities, further dialogue with him would be a waste of time, especially since he made it clear he was not ongoing counsel for the Aloft Hotel. To this day, Plaintiff has no knowledge if Stillman ever contacted the owners of the Aloft Hotel.

26.    Not sure if this was a "one-off" occurrence, or if Stillman notified the owners of the Aloft Hotel and they had made some changes, and having the need for a hotel again and thus facing either being "deterred" and staying someplace else, or patronizing the Aloft Hotel again, on December 4, 2023, Plaintiff revisited the Aloft Hotel. Unfortunately, he once more confronted the noted impediments: the absence of a designated loading zone, inadequate accessible parking signage, and an inaccessible front desk. Incredibly, although he was allocated a different accessible room compared to his prior visit, he encountered yet another malfunctioning automatic door which, contrary to its intended function, attempted to shut as he was trying to open it making the already heavy door even more difficult to open.

27.    After checking in, Plaintiff checked the status of the pool lift only to discover that it was in the same condition as his last visit. At this point, he used the chat feature of the Marriott app to inquire about the status of the pool lift and was informed that it was out of order (**Exhibit 5**). This contradicted what was advertised on the Marriott app which specifically states that the pool was accessible.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

28.     Realizing that, after taking his money on two separate occasions, not only did the Aloft Hotel not respond to his email, but also appeared to have made zero effort to correct the inaccessibility situation in over a month, Plaintiff sent a second more forceful letter to both the manager and assistant manager in an attempt to force a positive response. To ensure that no future claim of non-receipt could be made, and to reiterate the urgency of an attempt to avoid litigation, Plaintiff took the unusual step of having the letters delivered via a process services company.

29.     On December 8, 2023, the second letter entitled "SECOND NOTICE, Repeated ADA Violations" was substitute-served on John Garcia, General Manager and Dennis Berrios, Asst. General Manager by delivering a copy for each to Julisa Valle, Administrative Assistant at the Aloft Hotel at 9:39 am via Direct Legal Services, a professional process serving company (**Exhibit 6**). This company has provided a sworn proof of service. This letter was forceful, and specifically demanded "a detailed response within 10 days," and further warned that while Plaintiff is "**not** a high-frequency litigant" (emphasis included) he would not hesitate to pursue legal action should his concerns not be addressed. The common decency of any response whatsoever was not provided Plaintiff.

30.     When choosing hotels, it is customary that Plaintiff will search hotels online or via the hotel app, select the area that suits his needs, filter by amenities, and then look at what is available. Sometimes he will look up projected traffic from the hotel to a specific destination to see how convenient it would be. This creates a list of viable hotels in the area that meet the criteria specified. Unfortunately, because of Plaintiff's personal knowledge of the Aloft Hotel's failure to maintain accessibility standards, and understandably not wanting to deal with the humiliation, inconvenience, discomfort, and potential injury that may result from staying at the Aloft Hotel again, as well as the complete futility of not getting the service and amenities that he repeatedly paid for, he was deterred from considering

the Aloft Hotel from the list of available candidates when he is in that area, which is quite often.

31.     On December 7, 2023, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Los Angeles Airport Marriott.

32.     On December 28, 2023, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Sheraton Gateway Hotel.

33.     On January 2, 2024, because of the Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was specifically deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, Hampton Inn and Suites El Segundo.

34.     On March 11, 2024, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Sheraton Gateway Hotel.

35.     On March 18, 2024, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Sheraton Gateway Hotel.

36.     On April 3, 2024, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Sheraton Gateway Hotel.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

37.     On April 16, 2024, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the Americans with Disabilities Act (ADA), Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Sheraton Gateway Hotel.

38.     On May 2, 2024, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Residence Inn El Segundo.

39.     On May 30, 2024, because of Plaintiff's specific knowledge of the Aloft Hotel's failure to comply with the accessibility requirements of the ADA, Plaintiff was deterred from staying at the Aloft Hotel. As a result, Plaintiff chose to patronize another nearby hotel, the Sheraton Gateway Hotel.

40.     On June 20, 2024, after being deterred from staying at the Aloft Hotel for over six months and eight months following the initial notification to the hotel of its failure to comply with the ADA, Plaintiff once again faced the prospect of either being deterred from staying at the hotel or confronting the discrimination stemming from its ongoing noncompliance. Despite the frequent deterrents, Plaintiff decided to give the hotel the benefit of the doubt and attempt to stay there once more. Plaintiff's decision was influenced by past experiences where ADA violations were corrected or remedied without any formal response or notification, presumably for legal reasons. Unfortunately, it quickly became apparent that this occasion would not be one of those instances.

41.     Immediately upon arrival, Plaintiff observed that the Aloft Hotel had failed to install a protected disabled loading zone in their designated loading area. Consistent with previous visits, there had been no improvement in the signage for disabled parking within the parking lot. During check-in, and despite being visibly

in a Wheelchair, Plaintiff was directed to the non-accessible counter. The "accessible" counter, this time, was cluttered with miscellaneous items, including notebooks:



A third party thus had to complete the payment transaction using Plaintiff's credit card, as Plaintiff was unable to reach the card reader.

42.     The situation deteriorated further. Upon entering his "accessible" room, Plaintiff found that the disabled entry lock disengagement device was nonfunctional. The automatic door was not only inoperative but actively impeded attempts to open it, resulting in an excessively heavy door that required considerable force to open. Moreover, the pipes in under the sink were not insulated. After dropping off his bags, Plaintiff proceeded to the pool area, anticipating further issues. His expectation was confirmed as there was no battery for the pool lift:

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

15



43.     Plaintiff attempted to seek assistance by using the chat feature on the
Marriott Bonvoy app. The following is the transcript of that interaction (**Exhibit
2**):

    8:38 PM Plaintiff: "Hello, is there someone available to put the battery in the
    pool lift? Is it working?"

    8:39 PM Aloft: "Hey! Thanks for reaching out. We have received your
    message and will be right with you."

    8:44 PM Aloft: "Sorry for the delay. We are helping other guests and will
    respond as soon as possible"

    8:44 PM Plaintiff: "Oki" [*sic*]

44.     At some point after that, the hotel sent the message, "Hello James, are you

currently at the pool." The message has no timestamp. Plaintiff had in fact waited for nearly an hour before he proceeded back upstairs. But as it turned out it would not have mattered as the next morning, he was advised that the pool lift was still not functioning and that the "General manager is ordering a new one today." To be clear "today" is June 21, 2024. Nearly 8 months to the day when they were first notified on October 22, 2023.

45.     Given all of this, and making matters worse lacking the simple courtesy of any response from hotel management, Plaintiff will no doubt continue to be discouraged from reserving a room in a hotel whose features and amenities he personally knows are inaccessible to him until he is notified by the Aloft Hotel that they have corrected the issues identified in this complaint.

46.     Plaintiff will stay at the Aloft Hotel in the future if it is made accessible.

47.     Before filing this lawsuit, Plaintiff's inspector did an informal investigation of the Aloft Hotel. While he could not make detailed measurements, he confirmed that the Aloft Hotel was still inaccessible:

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   48.     These barriers to access are listed without prejudice to Plaintiff citing

21   additional barriers to access after inspection by Plaintiff's access consultant, per

22   the 9th Circuit's standing standards under *Doran v. 7-Eleven, Inc.* 524 F.3d 1034

23   (9th Cir. 2008), *Chapman v. Pier One Imports (USA), Inc.,* 631 F.3d 939 (9th Cir.

24   2011).

25   49.     Plaintiff alleges that it would be a futile gesture to provide notices of

26   violations relating to his continued or attempted visits, which are certain to occur

27   regularly following the filing of this Complaint. Therefore, Plaintiff will seek to

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES

supplement this Complaint at the time of trial as to subsequent events, according to proof.

50.     Defendants were aware or reasonably should have been aware, that certain aspects of their establishment and their policies made the Aloft Hotel inaccessible, constituting a violation of state and federal laws and hindering or denying access to individuals with mobility impairments. Based on available information, it is believed that Defendants possess the necessary financial means to eliminate these obstacles and make the Aloft Hotel accessible to people with physical disabilities. But Defendants have not taken action to remove these barriers or to ensure full and equal access to the facility.

51.     Because of Defendants' conduct, including their omissions and their failure to ensure access for the disabled, Plaintiff has experienced a violation of his civil rights, emotional distress, and infringement of his right to full and equal enjoyment of public facilities, resulting in general, special, and statutory damages. Each instance of denied access has subjected Plaintiff to difficulties, discomfort, and humiliation. Plaintiff has thus had to seek legal counsel and is now claiming statutory attorney's fees, litigation expenses, and costs, as provided for under federal and state law.

52.     Plaintiff's goal in this suit is a positive one: to make the Aloft Hotel fully accessible to persons with similar mobility disabilities.

**FIRST CLAIM:**

**VIOLATION OF THE ADA, TITLE III**

**[42 U.S.C. §§ 12101 et seq.]**

53.     Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them here as if separately repled.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

54.     Plaintiff was at all times relevant here a qualified individual with a disability as defined by the ADA, as he has impairments that substantially limit one or more major life activities.

55.     Plaintiff has reasonable grounds for believing he will be subjected to discrimination each time he may attempt to access and use the subject facilities.

56.     The subject property and facility are among the "private entities," which are considered "public accommodations" for purposes of Title III of the ADA. 42 U.S.C. § 12181(7).

57.     The acts and omissions of Defendants set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated under it, 28 C.F.R. Part 36, *et seq.* For example, Section 242.2 of the 2010 ADA Standards for Accessible Designs provides "242.2 Swimming Pools. At least two accessible means of entry shall be provided for swimming pools. Accessible means of entry shall be swimming pool lifts complying with 1009.2; sloped entries complying with 1009.3." Defendants have violated this regulation.

58.     Plaintiff alleges on information and belief that Aloft Hotel was designed and constructed (or both) after January 26, 1993 -- independently triggering access requirements under Title III of the ADA. Upon information an belief, which is based on publicly available documents, the Aloft Hotel went through extensive renovations which began around 2015 and were completed by July 2023. This renovation included alterations to 249 rooms and suites, parking, and lobby.

59.     Here, Defendants violated the ADA by designing or constructing (or both) Aloft Hotel in a manner that did not comply with federal and state disability access standards even though it was practicable to do so.

60.      The removal of each of the barriers complained of by Plaintiff were at all times here mentioned "readily achievable" under the standards §§12181 and 12182 of the ADA.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

61.     As noted throughout this Complaint, the removal of each of the architectural barriers complained of here was also required under California law.

62.     Defendants have discriminated against Plaintiff in violation of Title III of the ADA by: (a) providing benefits that are unequal to that afforded to people without disabilities; (b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations of the Aloft Hotel to individuals with disabilities; (c) failing to remove architectural barriers in existing facilities where such removal is readily achievable; and (d) where Defendants can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations of the Aloft Hotel available through alternative methods if such methods are readily achievable. On information and belief, as of the date of Plaintiff's most recent visit to the Aloft Hotel and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to Plaintiff and to other similarly mobility disabled persons in other respects, which violate Plaintiff's rights to full and equal access and which discriminate against him on the basis of his disability, thus wrongfully denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of §§ 12182 and 12183 of the ADA. The ability to safely enter and exit the Aloft Hotel, benefit from a loading zone and an accessible counter, use the swimming pool, and have a genuinely accessible room is a fundamental necessity. Without this ability, Plaintiff is unable to available himself of the goods and services offered at the Aloft Hotel on a full and equal basis. Therefore, the benefits of creating access, including, but not limited to, providing access to the pool/spa, does not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

business, like any other essential function of operating a public accommodation. It is thus readily achievable to remove these barriers. Furthermore, these are the types of barriers identified by the Department of Justice as presumably readily achievable to remove, and, in fact, these barriers are readily achievable to remove.

63.    Under the ADA, 42 U.S.C. 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as he is being subjected to discrimination based on disability in violation of the ADA or has reasonable grounds for believing that he is about to be subjected to discrimination.

64.    Plaintiff seeks relief under remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), and under Federal Regulations adopted.

WHEREFORE, Plaintiff requests relief as outlined below.

## SECOND CLAIM:
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### [Cal. Civil Code §§ 51 et seq.]

65.    Plaintiff repleads and incorporates by reference, as if fully set forth again here, the allegations contained in all paragraphs of this Complaint and incorporates them here by reference as if separately repled hereafter.

66.    Aloft Hotel is a business establishment within the meaning of the Unruh Act.

67.    Defendants are the owners and/or operators of a business establishment.

68.    Defendants violated the Unruh Act by their acts and omissions:

a.    Failure to construct or alter the Aloft Hotel in compliance with state building code and state architectural requirements;

b.    Failure to remove known barriers to access at the Aloft Hotel;

c.    Failure to modify policies and procedures as necessary to ensure Plaintiff full and equal access to the accommodations, advantages,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

23

facilities, privileges, or services of the Aloft Hotel; and

d.  Violation of the ADA, a violation of which is a violation of the Unruh Act. Cal. Civil Code § 51(f).

69.     Plaintiff has experienced barriers to access at the Aloft Hotel, all of which have caused him major difficulty, discomfort, and embarrassment. Plaintiff suffered mental and emotional damages, including statutory and compensatory damages, according to proof.

70.     On information and belief, the Aloft Hotel is also illegally inaccessible in multiple other respects. As noted above, the barriers to access described in this Complaint are listed without prejudice to Plaintiff citing additional barriers to access after inspection by Plaintiff's access consultant(s)/expert(s).

71.     These barriers to access render the Aloft Hotel inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof. Plaintiff prays for leave to amend this Complaint, if necessary, to obtain full injunctive relief as to barriers that limit or deny full and equal access to persons with similar mobility disabilities.

72.     Each violation of the ADA constitutes a separate violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief under California law, including, but not limited to, Civil Code § 52(a).

73.     As for Defendants' violations of the Unruh Act that are not predicated on violations of the ADA, Defendants' behavior was intentional: they were aware of or were made aware of their duties to remove barriers that prevent persons with mobility disabilities like Plaintiff from obtaining full and equal access to the Aloft Hotel. Defendants' discriminatory practices and policies that deny full enjoyment of Aloft Hotel to persons with physical disabilities reveal actual and implied

malice and conscious disregard for the rights of Plaintiff and other similarly disabled individuals. Defendants have thus engaged in willful affirmative misconduct in violating the Unruh Act.

74. On information and belief, the access features of the Aloft Hotel have not been improved since Plaintiff's visits there. Plaintiff's injuries are ongoing so long as Defendants do not modify their policies and procedures and provide fully accessible facilities for Plaintiff and other persons with similar mobility disabilities.

75. At all times mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that his barriers, policies and practices at its facilities violated disabled access requirements and standards and had a discriminatory impact upon Plaintiff and upon other persons with similar mobility disabilities, but Defendants failed to rectify the violations, and presently continues a course of conduct in maintaining barriers that discriminate against Plaintiff and similarly situated disabled persons.

WHEREFORE, Plaintiff requests relief as outlined below.


**THIRD CLAIM:**

**VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT**

**[Cal. Civil Code §§ 54 *et seq.*]**

76. Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

77. The Aloft Hotel is a place of public accommodation and/or places to which the public is invited and, as such, they must comply with the provisions of the California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.*

78. The CDPA guarantees, among other things, that persons with disabilities

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

have the same right as the public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. California Civil Code § 54.

79.     The CDPA also guarantees, among other things, that persons with disabilities have a right to full and equal access, as other members of the public, to accommodations, advantages, facilities, and privileges of covered entities. California Civil Code  § 54.1(a) (1).

80.     The CDPA also provides that a violation of the ADA is *a per se* violation of CDPA, California Civil Code  § 54.1(d).

81.     Defendants have violated the CDPA by, among other things, denying and/or interfering with Plaintiff right to full and equal access as other members of the public to the accommodations, advantages, and its related facilities due to his disability.

WHEREFORE, Plaintiff requests relief as outlined below.

## **PRAYER FOR RELIEF:**

1.      Plaintiff has no adequate remedy at law to redress the wrongs suffered as explained in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendants as alleged here, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

2.      Plaintiff requests a declaratory judgment that Defendants' actions, omissions, and failures—including but limited to: failing to remove known architectural barriers at the Aloft Hotel to make it "accessible to and useable by"

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

26

mobility disabled persons; failing to construct and/or alter the Aloft Hotel in compliance with federal access standards, state building code, and state architectural requirements; and failing to make reasonable modifications in policy and practice for Plaintiff and other persons with similar mobility disabilities.

3.      Plaintiff requests that the Court issue an order enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:[5]

      a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

      b.   To provide reasonable accommodation for persons with disabilities in all its programs, services, and activities at Aloft Hotel;

      c.  To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at the Facilities;

      d.  To modify the above-described facilities to provide full and equal access to persons with mobility disabilities, including, without limitation, the removal of all barriers to access where "readily achievable;"

      e.  To maintain such accessible facilities once they are provided;

      f.  To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons at the Facilities; and

      g.  To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities at the Facilities.

4.      Plaintiff requests that the Court retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions,

_____

[5] Plaintiff does not seek injunctive relief under Cal. Civil Code section 55.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

and maintenance of inaccessible public facilities as complained of here no longer occur, and cannot recur;

5.      Plaintiff requests all appropriate damages, including, but not limited to, statutory, compensatory, and treble damages in an amount within the jurisdiction of the Court, all according to proof;

6.      Plaintiff requests all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law, including, but not limited to, the ADA, 42 U.S.C. § 12205; the Unruh Act, California Civil Code § 52; and "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure § 1021.5.

7.      Plaintiff requests prejudgment interest under California Civil Code § 3291;

8.      Plaintiff requests interest on monetary awards as permitted by law; and

9.      Plaintiff requests any other relief that this Court may deem just and proper.

Date: July 4, 2024                         REIN & CLEFTON
                                           ALLACCESS LAW GROUP


                                           ___/s/ Irakli Karbelashvili___
                                           By IRAKLI KARBELASHVILI, Esq.
                                           Attorney for Plaintiff
                                           JAMES ALGER

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims for which a jury is permitted.


Date: July 4, 2024                                    REIN & CLEFTON
                                                      ALLACCESS LAW GROUP


                                                      ___/s/ Irakli Karbelashvili___
                                                      By IRAKLI KARBELASHVILI, Esq.
                                                      Attorney for Plaintiff
                                                      JAMES ALGER

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES